**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARSHA BRILEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 25-2205-BAH |
| MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * * *

# MEMORANDUM OPINION

Pending before the Court is Plaintiff Marsha A. Briley's ("Plaintiff's") motion to lift the stay and for leave to file a first amended complaint. ECF 13. Defendants, the Maryland Department of Public Safety and Correctional Services ("DPSCS" or "the Department") and Carolyn J. Scruggs ("Scruggs") opposed the motion in large part, ECF 15, and Plaintiff filed a reply, ECF 17. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Plaintiff's motion is **DENIED IN PART** and **GRANTED IN PART.**

## I. BACKGROUND

### A. Factual Background

The following facts are taken from Plaintiff's proposed amended complaint. Plaintiff is a resident of Maryland and former employee of DPSCS. ECF 13-1, at 4–5 ¶ 13. Defendants are DPSCS, Plaintiff's former employer, and Scruggs, the former Secretary of DPSCS, who exercised

direct authority over Plaintiff at all times relevant during Plaintiff's employment.[1] *Id.* at 5 ¶¶ 14–15.

1. Disability and Termination

Plaintiff began her career with DPSCS in 2005, working there for sixteen years in reentry services in progressively senior roles, until her termination on January 26, 2021. *Id.* at 5–6 ¶¶ 17–18, at 13 ¶ 63. Prior to Plaintiff's termination, she took approved medical leave from July 15, 2020, through October 5, 2020, for a diagnosed mental health condition that she alleges constitutes a disability within the meaning of 42 U.S.C. § 12102. *Id.* at 7 ¶¶ 24–27. "Plaintiff's condition, anxiety and panic attacks arising from a diagnosed mental health condition, required continuing treatment by licensed healthcare providers during the leave period." *Id.* ¶ 25. Plaintiff alleges that, upon her return from leave, Defendants retaliated against Plaintiff by placing a new hire above

[1] In Plaintiff's proposed first amended complaint, she listed Carolyn Scruggs as a Defendant in both her individual and official capacities. ECF 13-1, at 5 ¶ 15. However, in Plaintiff's reply, she withdrew her ADA claim against Scruggs in her individual capacity. ECF 17, at 13. Governor Wes Moore announced on November 6, 2026, that Carolyn Scruggs would be transitioning out of her role as secretary, effective that day. Press Release, Off. of Gov. Wes Moore, *Governor Moore Announces Cabinet Leadership Transitions* (Nov. 6, 2026) (hereinafter "Press Release"), https://governor.maryland.gov/news/press-releases/governor-moore-announces-cabinet-leadership-transitions. Because Defendant Scruggs is sued in her official capacity, Rule 25(d) applies: "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d). David C. Greene, Interim Secretary of DPSCS, *see* Press Release, will be substituted for Defendant Scruggs in this matter.

Additionally, in Plaintiff's proposed amended complaint she listed Martha Danner as a defendant in her official capacity. ECF 13-1, at 5–6 ¶ 16. Danner was the Director of the Division of Parole and Probation at DPSCS and exercised supervisory authority over Plaintiff during Plaintiff's employment, but she is no longer employed with DPSCS. ECF 13-1, at 5 ¶ 16; ECF 17, at 11–12. In her reply, Plaintiff abandoned her claim against Danner, stating that "the official-capacity claim against Danner is moot." ECF 17, at 12. Accordingly, the Court will consider only the claims against DPSCS and Scruggs in her official capacity. The claims against Danner in her official capacity and Scruggs in her individual capacity will not be addressed.

Plaintiff in the supervisory chain, stripping Plaintiff of her direct reports, excluding Plaintiff from leadership meetings she previously attended, denying Plaintiff a description of her position, and assigning Plaintiff impossible tasks. *Id.* at 8–9 ¶¶ 31–40. Plaintiff further alleges that DPSCS officials demonstrated a lack of respect for her disability by questioning its legitimacy, and that Scruggs disclosed Plaintiff's confidential medical information to others within DPSCS. *Id.* at 9–10 ¶¶ 42–44.

On November 30, 2020, around seven weeks after Plaintiff returned from leave, she submitted an accommodation request under the Americans with Disabilities Act ("ADA"), requesting the following accommodations from DPSCS:

> permission to use an emotional support animal when on-site; flexible arrival times to manage medication side effects; follow-up written instructions after verbal meetings; advance notice for meetings; time off for scheduled medical appointments; structured work periods without interruption; job restructuring; and, if necessary, reassignment to an equivalent position at the same grade and salary.

*Id.* at 10–11 ¶¶ 45–48. On January 19, 2021, an Equal Employment Officer for DPSCS issued a written denial of Plaintiff's requested accommodations, allegedly providing her ten days to appeal the denial. *Id.* at 12–13 ¶¶ 57, 62.

Plaintiff alleges that during the time between the submission of her accommodation request and its denial, DPSCS did not seek to work with her regarding possible alternatives or modifications to her accommodations, and that a DPSCS officer with actual knowledge of the request publicly mocked her in the presence of her colleagues. *Id.* at 11 ¶¶ 51–54. In a virtual meeting, an Executive Director at DPSCS allegedly said, "is the dog going to bite Assistant Secretary Scruggs because she's your trigger?," referring to Plaintiff's request for an emotional support animal. *Id.* ¶ 54.

Plaintiff was terminated thereafter on January 26, 2021, seven days after DPSCS denied her accommodation request, and three days before her alleged appeal rights lapsed. *Id.* at 13 ¶ 63. Plaintiff alleges that DPSCS gave no reason for the termination. *Id.* ¶ 66. On January 27, 2021, the day after her termination, Plaintiff filed formal administrative charges with the Maryland Commission on Civil Rights ("MCCR") and the Equal Employment Opportunity Commission ("EEOC") for disability discrimination, failure to accommodate, hostile work environment, and retaliation in violation of the ADA. *Id.* at 3 ¶ 4.

2. Post-Termination Retaliation

Immediately following Plaintiff's termination, DPSCS allegedly issued a blanket facility ban prohibiting Plaintiff from entering any Maryland state correctional facility and refused to provide Plaintiff an explanation. *Id.* at 14–15 ¶¶ 72–74, 77. Plaintiff alleges that this ban affected her subsequent employment as a Reentry Coordinator for Anne Arundel County, because "her role required access to state correctional facilities to serve individuals in her reentry program." *Id.* at 17 ¶ 91. Plaintiff further alleges that a photograph of her was posted at the security desk of DPSCS headquarters for six months or more. *Id.* at 15 ¶¶ 80, 84.

Plaintiff alleges that between 2021 and 2024, Defendant engaged in additional post-employment retaliatory actions like instructing others not to engage with Plaintiff professionally, *id.* at 17 ¶¶ 95–97, circulating false information about Plaintiff's professional services, *id.* at 18 ¶¶ 100–105, contacting Plaintiff's new employer, spreading false information about Plaintiff's social media, *id.* at 18–19 ¶¶ 106–109, and interfering with Plaintiff's appointment to the Governor's Task Force to Create an Office on Returning Citizens and Expand Reentry Services ("Task Force") and her participation in the Task Force thereafter. *Id.* at 19–20 ¶¶ 111–19. On March 21, 2023,

Plaintiff filed a second charge with the MCCR and the EEOC, alleging post-employment retaliation in violation of the ADA. *Id.* at. 3 ¶ 5.

3. Alleged Ongoing Retaliation

Plaintiff alleges that the facility ban remains in effect and continuously interferes with her professional duties. *Id.* at 15 ¶ 79. In Plaintiff's reply, she further argues that her exclusion from the Governor's Task Force is likewise ongoing, and that "stigmatizing materials" are currently maintained by DPSCS. ECF 17, at 12.

**B. Procedural History**

Plaintiff filed her initial complaint on July 9, 2025, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-3(a) and retaliation in violation of the ADA, 42 U.S.C. § 12202(a). ECF 1, at 13–16 ¶¶ 39–56. In response, Defendants filed a motion to dismiss, or in the alternative, for summary judgment. ECF 7, at 1. Plaintiff filed a response opposing the motion and requesting that the Court stay proceedings.[2] ECF 8, at 17. This Court granted Plaintiff's unopposed request to stay the case pending the resolution of Plaintiff's first MCCR/EEOC charge on March 7, 2026. ECF 12, at 1–3. On March 23, 2026, Plaintiff filed this motion to lift the stay and for leave to file an amended complaint to replace her claim under Title VII of the Civil Rights Act, with the following claims under the ADA: disability discrimination in violation of 42 U.S.C. § 12212(a) against DPSCS (Count I), failure to accommodate in violation of 42 U.S.C. § 12112(b)(5)(A) against DPSCS (Count II), retaliation in violation of 42 U.S.C. §

---

[2] At the time of Plaintiff's initial complaint, the MCCR and EEOC had only resolved Plaintiff's second charge and issued a right-to-sue notice for that charge. ECF 8, at 17. However, Plaintiff was required under 42 U.S.C. § 2000e-5(f)(1) to file an action within ninety days of receiving that right-to-sue notice. *Id.* Plaintiff requested a stay to allow her first charge with the MCCR and EEOC to resolve, and to receive a right-to-sue as to the first charge, to then consolidate the actions. *Id.* Defendants did not oppose the stay. ECF 11, at 2 n.1.

12203(a) against DPSCS and Scruggs in her individual capacity (Count III), retaliation in violation of 42 U.S.C. § 12203(a) against DPSCS, Scruggs, and Danner in official capacity only (Count IV), and hostile work environment in violation of 42 U.S.C. § 12112(a) against DPSCS (Count V). ECF 13-1, at 23–44 ¶¶ 141–199. For these claims, Plaintiff requests declaratory relief, injunctive relief, back pay and lost benefits, compensatory damages, punitive damages, attorneys' fees and costs, pre- and post-judgment interest, and any other relief the Court deems proper. *Id.* at 44–46.

Defendants filed a response requesting the Court deny Plaintiff's motion for leave to amend her complaint, arguing that the amendment is futile because it would not survive a Rule 12(b)(6) motion to dismiss.[3] ECF 15, at 2 ¶ 5; ECF 15-1, at 6. Plaintiff filed a reply, abandoning her claim against Danner as moot, and withdrawing her claim against Scruggs in her individual capacity (Count III).[4] ECF 17, at 12–13.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15 requires courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While it is within the discretion of a district court to deny leave to amend, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons that justify denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

[3] Defendants do not oppose Plaintiff's request to lift the stay. ECF 15-1, at 15. The stay will be lifted.

[4] In Plaintiff's reply, she stated that she "respectfully reserves leave to amend" to add claims against Scruggs in her individual capacity under 42 U.S.C. § 1983 "if the Court determines [that section] is a necessary vehicle for individual capacity relief." ECF 17, at 13. The Court does not address this because Plaintiff has not sought leave to amend to add such claim.

of allowance of the amendment, [and] futility of amendment." *Id.* The Fourth Circuit has explicitly directed trial courts "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

Amendment is not required if it would be futile. *See Katyle v. Perm Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008))). An amendment is futile where it would not withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Review for futility "does not involve 'an evaluation of the underlying merits of the case.'" *Kolb v. ACRA Control, Ltd.*, 21 F. Supp. 3d 515, 522 (D. Md. 2014) (quoting *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, Civ. No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013)). "To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, Civ. No. CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (alterations in original) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert dismissed*, 448 U.S. 911 (1980)).

## III. <u>ANALYSIS</u>

### A. Plaintiff's Claims Against DPSCS: Counts I–V

Plaintiff seeks leave to amend to add five claims against DPSCS, all arising under the ADA. Plaintiff's claims of discrimination, failure to accommodate, and hostile work environment arise

under Title I of the ADA. *See* 42 U.S.C. §§ 12112(a), (b)(5)(A). Plaintiff's two claims of retaliation arise under Title V of the ADA. *See* 42 U.S.C. § 12203(a). Defendant opposes Plaintiff's motion, arguing that the proposed amendment is futile because DPSCS is "entitled to immunity from suit under the Eleventh Amendment to the United States Constitution."[5] ECF 15, at 2.

The Eleventh Amendment of the U.S. Constitution "limits the Article III jurisdiction of the federal courts to hear cases against States and state officers acting in their official capacities." *Kitchen v. Upshaw*, 286 F.3d 179, 183–84 (4th Cir. 2002). The States' sovereign immunity extends to state departments as "arms of the state," prohibiting individual citizens from suing such departments in federal court. *Pennhurst State Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 102–03 (1984).

There are three exceptions to the Eleventh Amendment bar to suit. *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012). "First, 'Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority.'" *Id.* (quoting *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). Second, the *Ex parte Young* doctrine of the Eleventh Amendment "permits suits for prospective injunctive relief against state officials acting in

[5] Specifically, Defendant contends that the proposed amended complaint would not survive a Rule 12(b)(6) motion to dismiss. ECF 15, at 2; ECF 15-1, at 6. Eleventh Amendment sovereign immunity is typically viewed as an issue of subject matter jurisdiction. *See, e.g., Tsubaki v. Balt. City Cmty. Coll.*, Civ. No. 24-3584-ABA, 2026 WL 254428, at *1 (D. Md. Jan. 30, 2026). Regardless, if an amended complaint could not survive a motion to dismiss for lack of subject matter jurisdiction, the amendment is futile. *See Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521 (D. Md. 2015), *aff'd* 659 F. App'x 744, 745 (4th Cir. 2016) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)) ("An amendment is futile if it would fail to withstand a motion to dismiss."); *see also Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citations omitted) ("[A] court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.").

violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). "Third, '[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court.'" *Lee-Thomas*, 666 F.3d at 249 (alteration in original) (quoting *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002)).

Defendant DPSCS is a department of the State of Maryland. *See* Md. Code Ann., Corr. Servs. § 2-101; *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) ("Maryland Department of Public Safety and Correctional Services is undoubtedly an arm of the state"). For the reasons explained below, DPSCS enjoys sovereign immunity as to all five of Plaintiff's claims under the ADA because none of the exceptions apply.

The first exception does not apply because Congress has not validly abrogated States' sovereign immunity under Title I of the ADA. *Garrett*, 531 U.S. at 373–74. In *Garrett*, the Supreme Court held that the Eleventh Amendment bars state employees from "recover[ing] money damages by reason of the State's failure to comply with the provisions of Title I of the [ADA]."[6] *Id.* at 360. The Court reasoned that although Congress unequivocally intended to permit individuals to sue states under the ADA, it was not constitutionally permitted to do so, because, among other reasons, "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Id.* at 367–68. This Court recently addressed the issue in *Tsubaki v. Baltimore City Community College*, Civ. No. 24-3584-ABA, 2026 WL 254428, at *3 (D. Md. Jan. 30, 2026). There, in addressing employment discrimination claims against a state agency under Title I of the ADA, Judge Abelson explained that "Supreme Court and Fourth Circuit precedent is clear that there is

[6] As to injunctive relief, *Garrett* states that such relief can still be enforced by private individuals under *Ex parte Young*. *Garrett*, 531 U.S. at 374 n.9.

no [sovereign immunity] abrogation" for Title I claims. *Id.* (citing *Garrett*, 531 U.S. at 360; *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014)).

As to Plaintiff's Title V retaliation claims, "neither the Supreme Court of the United States nor the Fourth Circuit has addressed whether Congress validly abrogated sovereign immunity under Title V of the ADA." *Squire v. Md. Transit Ass'n*, Civ. No. 22-02493-JRR, 2023 WL 4593373 at *5 n.4 (D. Md. July 18, 2023) (quoting *Shannon v. City of Richmond Va. Sheriff's Off.*, No. 3:22cv460, 2023 WL 2720806, at *8 (E.D. Va. Mar. 30, 2023)). Still, this Court has concluded that "Eleventh Amendment immunity applies to retaliation claims brought under Title V of the ADA when such claims are predicated on an alleged violation of Title I of the ADA." *Id.* (quoting *Shannon*, 2023 WL 2720806 at *8); *see also Cook v. Springfield Hosp. Ctr.*, Civ. No. ELH-16-2024, 2016 WL 6124676 at *7 (D. Md. Oct. 19, 2016) ("[W]here Title V claims are predicated on Title I claims, 'Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims.'" (quoting *Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001))).

Here, Counts I, II, and V of Plaintiff's complaint are against a state agency and arise under Title I of the ADA. 42 U.S.C. §§ 12112(a), (b)(5)(A). Counts III and IV of Plaintiff's complaint arise under Title V of the ADA and are necessarily predicated upon Plaintiff's allegations under Title I: "Title V does not have its own remedial scheme. Thus, a Title V claim must be predicated on another section of the ADA." *Adeyemi v. Dep't of Pub. Safety and Corr. Servs.*, Civ. No. ELH-19-3207, 2021 WL 1785141, at *4 (D. Md. May 5, 2021) (internal citation omitted); *see also* 42 U.S.C. § 12203(a). Both Plaintiff's pre- and post-termination retaliation claims in the proposed amended complaint rest on Title I employment discrimination allegations. *See* ECF 13-1, at 31–40 ¶¶ 161–185. As such, sovereign immunity has not been abrogated for any of Plaintiff's claims against DPSCS.

The second *Ex parte Young* exception does not apply to claims against DPSCS because the exception is reserved for individual officers rather than the department in its entirety. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (stating that the *Ex parte Young* doctrine "has no application in suits against States and their agencies"); *see also Pennhurst*, 465 U.S. at 102 (explaining that *Ex parte Young* is limited to suits against state officials).

The third exception is likewise inapplicable because Maryland has not voluntarily waived its immunity as to Title I or Title V ADA claims in federal court. *See Tsubaki*, 2026 WL 254428 at *3 ("Maryland has not waived sovereign immunity for ADA claims."); *Mattison v. Md. Transit Admin., Md. Dep't of Transp.*, Civ. No. RDB-15-1627, 2016 WL 2898020, at *5 (D. Md. May 18, 2016) ("Maryland has not waived its immunity from . . . Title I ADA claims in federal court."); *Cook*, 2016 WL 6124676, at *8 ("[B]ecause Cook's Title V claim arises out of her Title I claim, Maryland enjoys sovereign immunity as to that claim as well.").

Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims against DPSCS due to Eleventh Amendment sovereign immunity. *See Cunningham*, 888 F.3d at 649 (stating "it is clear" that sovereign immunity deprives federal courts of jurisdiction); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Because such claims would not survive a motion to dismiss, an amendment to add them would be futile. *See Perkins*, 55 F.3d at 917. This Court thus denies Plaintiff's motion with respect to Counts I–V against DPSCS.

**B. Plaintiff's Claim Against Scruggs in Her Official Capacity: Count IV**

While Eleventh Amendment sovereign immunity generally bars individual lawsuits against state departments, the *Ex parte Young* doctrine "allows private citizens, in proper cases, to petition

a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). "[T]he exception is narrow: it applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146 (internal citations omitted). To determine whether the doctrine applies to a state official acting in their official capacity, a court "need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Plaintiff's proposed claim against Scruggs in her official capacity is excepted from Eleventh Amendment immunity by *Ex parte Young*. First, Plaintiff's proposed amended complaint alleges an ongoing action in violation of federal law: that the facility ban "remains in effect as of the date of this filing and continues to interfere with Plaintiff's ability to perform her professional responsibilities," allegedly in violation of 42 U.S.C. § 12203(a). *Id.* at 15 ¶ 79. Second, Plaintiff requests prospective relief: she seeks to enjoin Defendants from "maintaining or enforcing the facility ban, from disseminating false information regarding Plaintiff's professional activities or reentry program, from interfering with Plaintiff's participation in state governmental functions, and from engaging in any further retaliatory conduct against Plaintiff in connection with her exercise of rights protected under the ADA." ECF 13-1, at 40 ¶ 185. Plaintiff further requests the "removal of any stigmatizing materials from DPSCS facilities, systems, and internal communication." *Id.* at 45.

If a claim is not "clearly insufficient or frivolous on its face," denying amendment "would run contrary to the Fourth Circuit's well established policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a))." *Ruben v. Wells Fargo Bank, N.A.*, Civ. No. 25-450-BAH, 2025 WL 2721194, at *3 (D. Md. Sept. 23, 2025) (internal quotation marks omitted) (quoting *Sulton v. Balt. Cnty.*, Civ. No. SAG-18-2864, 2021 WL 82925, at *2 (D. Md. Jan. 11, 2021)). Plaintiff's proposed amended complaint alleges new facts that, if true, may entitle her to prospective injunctive relief that can likely be facilitated by the Secretary of DPSCS, such as cessation of enforcing the facility ban against Plaintiff. Granting amendment with respect to Count IV against Scruggs in her official capacity is proper here because the claim is "potentially cognizable" and is not "clearly insufficient or frivolous on its face." *Ruben*, 2025 WL 2721194, at *3 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)).

## IV. CONCLUSION

Eleventh Amendment sovereign immunity protects DPSCS from lawsuits by individual citizens unless one of three exceptions applies. None of the exceptions apply here. As a result, this Court lacks subject matter jurisdiction over claims against DPSCS, so an amendment adding such claims would be futile. However, Plaintiff's claim against Defendant Scruggs in her official capacity is excepted by *Ex parte Young*. As such, Plaintiff's motion is denied to the extent that the proposed amendments assert claims against DPSCS, and granted as to the official-capacity claim against Scruggs. In an effort to avoid confusion, Plaintiff will be directed to file an amended complaint containing only the official capacity claim against Scruggs's successor. To be clear, allowing the amendment as to the official capacity claim does not preclude the defendant from later moving to dismiss those claims.

For the foregoing reasons, Plaintiff's motion for leave to amend is **DENIED** with respect to all claims against the Maryland Department of Public Safety and Correctional Services and **GRANTED** with respect to Count IV against Defendant Scruggs.

A separate implementing order will issue.

Dated: November 23, 2026

/s/
Brendan A. Hurson
United States District Judge